**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PARVIZ KARIM-PANAHI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 17-cv-00605 (TSC) |
| 4000 MASSACHUSETTS APARTMENTS *et al*., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff, appearing *pro se*, has sued more than twenty defendants for what appears to be housing discrimination and other alleged wrongs. He has divided the defendants into eight groups, and each group has moved to dismiss under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, Defendants' motions will be GRANTED.

**I. BACKGROUND**

Plaintiff's "Civil & Criminal Complaint" is neither "short" nor "plain." Fed. R. Civ. P. 8(a). He describes the Defendants as an "assorted conglomerate of landlords, property management companies, and /or credit reporting agencies," who "by personal meetings and/or search of credit and legal actions . . . committed alleged conspiracies/violations had actual and/or constructive knowledge of Plaintiff's national-origin, race, religion, age, to create terror-horror, intentionally and forcing people to

1

resolve their grievances, not by laws/ judiciary/ courts, but by violence." (Compl. At 4).

Distilled to its core, the Complaint accuses the Defendants of a vast conspiracy to discriminate and retaliate against Plaintiff in his quest to secure housing at several apartment complexes in the District of Columbia under the voucher program governed by Section 8 of the National Housing Act of 1937 ("Section 8"), as amended. 42 U.S.C. § 1437f(o).

The voucher program is described as follows:

> The Section 8 Housing Choice Voucher Program was created by Congress under Section 8 of the Housing and Urban-Rural Recovery Act of 1983, which amended the United States Housing Act of 1937. 42 U.S.C. § 1437f (2006). The purpose of the Section 8 program is to aid "low-income families in obtaining a decent place to live and [to] promot[e] economically mixed housing" by providing such families with subsidies to enable them to rent units in the private rental housing market. *Id*. The federal government allocates funds to local public housing agencies through the United States Department of Housing and Urban Development ("HUD"), and the local public housing agencies enter into housing assistance payment contracts with property owners when the agencies agree to subsidize the rent of eligible families. *Id*.
>
> The [local] Authority is the public housing agency for the District of Columbia. D.C. Code § 6-202 (2004). The Authority is governed by federal regulations promulgated by HUD, 24 C.F.R. § 982 (2004), as well as by local regulations, *see generally* D.C. Mun. Regs. tit. 14, § 8900 (2004). A participant accepted into the voucher program by the Authority must be in compliance with the requirements of the program, 24 C.F.R. § 982.551, and may be denied benefits or have his or her benefits terminated for non-compliance with any of eleven enumerated events[.]

*Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6, 8-9 (D.D.C. 2009). A voucher participant's obligations include the following:

>(b) Supplying required information—
>
>(1) The family must supply any information that the PHA or HUD determines is necessary in the administration of the program, including submission of required evidence of citizenship or eligible immigration status (as provided by 24 CFR part 5). "Information" includes any requested certification, release or other documentation.
>
>(2) The family must supply any information requested by the PHA or HUD for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements.
>
>(3) The family must disclose and verify social security numbers (as provided by part 5, subpart B, of this title) and must sign and submit consent forms for obtaining information in accordance with part 5, subpart B, of this title.
>
>(4) Any information supplied by the family must be true and complete.

24 C.F.R. § 982.551.

Plaintiff alleges the following relevant facts. On June 3, 2016, the D.C. Housing Authority issued him a Section 8 voucher, which would expire in six months, on December 3, 2016. (Compl. ¶ 45). The "payment standard [was] set at $1,823.00 for one-/1-Bedroom." (*Id.* ¶ 46). On June 4, 2016, Plaintiff responded to Defendant 4000 Massachusetts Apartments' ("4000 Mass.") advertisement of a one-bedroom apartment. A leasing agent showed Plaintiff Unit-901 and indicated that it was available for immediate occupancy. (*Id.* ¶ 52). "[U]pon promise of immediate move-in by the leasing-agent, Plaintiff chose" that apartment on June 6, 2016, which, with a monthly rent of $1,775.00, including utilities, was "within DCHA rental-standard payment for the area." (*Id.* ¶ 54). Plaintiff provided a copy of the Section 8 voucher "but still was asked and forced to pay $70.00 (as non-refundable application fee), and $500.00 (as

holding fee)[.]" (*Id.* ¶ 55). Plaintiff paid both amounts by two separate checks after being "assured by the agent that he would be approved and move in immediately[.]" (*Id.*). The leasing agent, "interested to have Plaintiff . . . move in ASAP and to finalize renting process . . . demanded that Plaintiff . . . provide Originals of DCHA Package, (Request Tenancy Approval/RTA), to be filled, signed by both side, and immediately submitted to DCHA[.]" (*Id.* ¶ 57). In light of the leasing agent's assurances, Plaintiff provided "originals" of the package "and stopped looking for any other apartment unit." (*Id.*).

Plaintiff alleges that at the time of his inquiry about the apartment at 4000 Mass., he "was unaware that [defendant] Polinger [and supposedly other defendant landlords and property management companies] had created red-lining in D.C. NW areas not to rent to minorities, low income applicants with 'Governmental Source of Income'/HUD Section-8 rental subsidy, minorities and with plaintiff's national origin, race, religion, color[.]" (*Id.* ¶ 53). Plaintiff learned from DCHA a "few days" after providing the requested package "that the Polinger/property-management company, (after becoming knowledgeable of the Plaintiff's ethnicity, national-origin, race, religion, and legal actions to protect his rights), had ordered" the leasing agent "to contact and ask the DCHA officials to guarantee in writing that HUD Section-8 would pay 100% of the rent as rental subsidy; knowing that DCHA could not legally provide such guarantee, intended as an excuse to deny Plaintiff the provisions of Fair Housing Act." (*Id.* ¶ 58). On June 16, 2016, "Polinger leasing office . . . mailed an 'adverse-action' letter" to plaintiff at his former residence in Orange County, California, which "denied renting

4

the apartment[,] [and] "in [a] few days/weeks" the leasing agent was terminated. (Compl. ¶ 59).

Allegedly upon receiving "verbal notice of intention of legal actions," Polinger's Senior Vice President, defendant Petrine Squires, contacted Plaintiff and on August 23, 2016, "e-mailed the Adverse-Action letter," which was "based on a credit report provided by [defendant] CoreLogic Safe-Rent agency." (*Id*. ¶ 60). The next day, on August 24, 2016, Plaintiff contacted CoreLogic, which allegedly refused to e-mail the credit report to Plaintiff" and eventually "forced plaintiff to send his picture ID" and "to provide [the] residence address of an acquaintance to be able to receive the Report[.]" (*Id*. ¶ 61). "Pages 4 & 5 of the Credit Report, based on which the [rental] application was denied . . . claimed: 'Insufficient Income and Tax Lien Information Found.'" (*Id*. ¶ 62). The latter stemmed from tax liens "fraudulently filed by California Franchise Tax Board," which, despite Plaintiff's legal actions, have not been removed. (*Id*. ¶¶ 65-66).

Meanwhile, on July 16, 2016, Plaintiff contacted the leasing office of defendant Chesapeake & Saratoga Apartments on Connecticut Avenue, N.W., which Plaintiff alleges is owned and managed by Horning Brothers. Plaintiff was shown a one-bedroom apartment, which rented for $1,725 per month. Allegedly, DCHA approved Plaintiff for the rental and he submitted the DCHA package to the leasing office. Plaintiff paid an application fee of $75.00 "and another $550.00 . . . Facilities Fee," both non-refundable. (Compl. ¶¶ 72-75). Nevertheless, Plaintiff "mentioned" that the application fee was "unreasonable" and the "Facility/Amenity Fee" lacked

5

"justification." (*Id*. ¶ 75). When the leasing agent "stated that all apartment buildings in the areas are asking the same or more," Plaintiff contacted the nearby Park Van Ness Apartments, which provided him "pamphlets indicating" seemingly higher total amounts. Plaintiff concludes: "the reason that the above amount of $211.25 per month is not deducted from rent, is conspiratorial 'Red-Lining' and to keep those with governmental source of income not to be qualified, preventing them to move to the DC-NW area." (*Id*. ¶ 76). Plaintiff's allegations continue in this largely incomprehensible manner against each group of defendants. (*See* Compl. at 22-32).

Plaintiff attaches to the Complaint the rental application rejection notices of 4000 Massachusetts Apartments (Group I Defendant); Chesapeake Apartments (Group II Defendant); The Kenmore Apartments (Group III Defendant); 3003 Van Ness Apartments (Group IV Defendant); Mt. Vernon Plaza/W.H.H. Trice Company (Group V Defendant); and Berkshire Apartments (Group VI Defendant). (Compl. Ex. A). Each notice was based on Plaintiff's credit report obtained from either Corelogic Rental Property Solutions LLC; RentGrow, Inc. dba Yardi Resident Screening; Kroll Factual Data; or TransUnion Consumer Solutions (Group VIII Defendants). (*See id*.).

Plaintiff purports to bring "Civil & Criminal Causes of Action" (Compl. at 33), captioned as follows:

> First Cause of Action: Violation and Denial of First Amendment to U.S. Constitution, Right to Petition Government for Redress of Grievances.
>
> Second Cause of Action: Violation and Denial of First Amendment to U.S. Constitution; Promoting Violence, and Forcing to Use Guns, rather than Resolving Disputes/Grievance through Laws/Judiciary/Courts.

6

Third Cause of Action: Discrimination; because of Plaintiff's Age/78-years old, (42 U.S.C. § 6102).

Fourth Cause of Action: Discrimination, Denial of Fair Housing and other Prohibited Practices; because of Plaintiff's National-Origin/Iranian, (42 U.S.C. § 3604(a).

Fifth Cause of Action: Discrimination, Denial of Renting Apartment and other Prohibited Practices; because of Plaintiff's Religion/Muslim (42 U.S.C. § 3604(a).

Sixth Cause of Action: Discrimination, Denial of Renting Apartment and other Prohibited Practices; because of Plaintiff's Race/Middle-Eastern Iranian (42 U.S.C. § 3604(a).

Seventh Cause of Action: Discrimination, Denial of Renting Apartment and other Prohibited Practices; because of Plaintiff's Color/Dark-Skin Middle-Eastern Iranian, (42 U.S.C. § 3604(a).

Eighth Cause of Action: Discrimination in Terms, Conditions or Privileges of Renting Apartment because of Plaintiff's National-Origin/Iranian, 42 U.S.C. § 3604(b).

Ninth Cause of Action: Discrimination in Terms, Conditions or Privileges of Renting Apartment because of Plaintiff's Religion/Muslim, 42 U.S.C. § 3604(b).

Tenth Cause of Action: Discrimination in Terms, Conditions or Privileges of Renting Apartment because of Plaintiff's Race/Middle-Eastern Iranian, 42 U.S.C. § 3604(b).

Eleventh Cause of Action: Discrimination in Terms, Conditions or Privileges of Renting Apartment because of Plaintiff's Color/Dark-Skin Middle-Eastern Iranian, 42 U.S.C. § 3604(b).

Twelfth Cause of Action: Representing Dwelling Not Available for Inspection, or Renting because of Plaintiff's National-Origin/Iranian, 42 U.S.C. § 3604(d).

Thirteenth Cause of Action: Representing Dwelling Not Available for Inspection, or Renting because of Plaintiff's Religion/Muslim, 42 U.S.C. § 3604(d).

Fourteenth Cause of Action: Representing Dwelling Not Available for Inspection, or Renting because of Plaintiff's Race/Middle-Eastern Iranian, 42 U.S.C. § 3604(d).

Fifteenth Cause of Action: Representing Dwelling Not Available for Inspection, or Renting because of Plaintiff's Color/Dark-Skin Middle-Eastern Iranian, 42 U.S.C. § 3604(d).

(Compl. at 33-41). Plaintiff also asserts claims under District of Columbia law (*see id.* at 42-46), and various other causes, including conspiracy to violate his civil rights (*see id.* at 47-50). Plaintiff seeks equitable relief and $1 million in monetary damages (*see id.* at 51-54).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that a defendant has fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing cases). Rule 12(b)(6) permits a party to move for dismissal on the grounds that the complaint has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A plaintiff's factual allegations need not establish all elements of a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010), but they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). A complaint containing only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. In addition, the presumption of truth accorded factual allegations at this stage does not apply to a plaintiff's legal conclusions in the complaint, including those "couched" as factual allegations. *Id*. (quoting *Twombly*, 550 U.S. at 555).

"In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014). Therefore, "'where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment' . . . 'Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied'. . .

9

Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012) (citations omitted); *see also Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 144-45 (D.D.C. 2012), *aff'd*, 483 Fed. Appx. 576 (D.C. Cir. 2012).

### III. ANALYSIS

The instant complaint is antithetical to Rule 8(a)'s pleading standard and may be dismissed for that reason alone. *See Jiggetts v. D.C.*, 319 F.R.D. 408, 413 (D.D.C. 2017), *aff'd sub nom. Cooper v. D.C.*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017) (noting that "a complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material will patently fail [Rule 8(a)'s] standard, and so will a complaint that contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments") (citations and internal quotation marks omitted)). But having considered Plaintiff's allegations liberally and painstakingly, the Court is left with no idea as to what Defendants are alleged to have done other than the due diligence associated with renting an apartment. Consequently, the Court will dismiss the complaint under Rule 12(b)(6) for failure to state a claim.

The defendant apartment owners and lessors (collectively Landlords) were permitted by Fair Housing regulations to check Plaintiff's credit history (*see*, *e.g.*, Group II and Group IV Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss at 2-4, ECF No. 34), and the credit bureau defendants were obligated to provide the lessors with

Plaintiff's credit history (*see* Trans Union, LLC's Mem. at 10-12, ECF No. 16); 15 U.S.C. § 1681b ("Permissible purposes of consumer reports"). The attachments to the Complaint establish that Plaintiff's rental applications were not denied for any discriminatory purpose but rather because his credit history contained "too many inquiries," "derogatory accounts or public records," and insufficient debt experience. (Berkshire's Nov. 23, 2016 Notice).

"Federal law does not require landlords to accept housing vouchers, and landlords who do accept vouchers are not required to approve tenants merely because they are voucher holders." *Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 890 (W.D. Tex. 2015). "Rather, landlords who [choose to] participate in the Program may screen prospective tenants and reject them if screening reveals red flags in terms of paying rent and utility bills, caring for rental housing, respecting neighbors, criminal activity, and the like." *Id.* (citing 24 C.F.R. § 982.307(a) (discussing landlord's obligation to screen prospective tenants and factors properly considered in so doing)); *see Pasquince v. Brighton Arms Apartments*, 378 N.J. Super. 588, 595, 876 A.2d 834, 838-40 (App. Div. 2005) (concluding upon examination of federal and New Jersey law that "it is well established that creditworthiness is a legitimate, non-discriminatory criteria which landlords are permitted to consider when evaluating prospective tenants, including recipients of Section 8 housing assistance" and finding it "significant" that HUD "consider[s] that landlords may take into account the creditworthiness of Section 8 applicants").

11

Apart from Plaintiff's failure to allege any plausible acts of wrongdoing, Plaintiff has alleged no facts to support his specific claims of conspiracy and discrimination based on race, color, ethnicity, religion and age. To state a discrimination claim under federal law, Plaintiff must "plead" facts establishing that he belongs to a protected class and that each "defendant acted with discriminatory purpose," which "requires more than intent as volition or intent as awareness of consequences." *Iqbal*, 556 U.S. at 676. The Complaint here comes nowhere near satisfying the latter requirement. As a result, none of Plaintiff's purported federal claims of discrimination survives a motion to dismiss, and the court declines to exercise supplemental jurisdictional over Plaintiff's claims arising under D.C. or common law, save the conspiracy claim.[1]

To state a conspiracy claim generally, Plaintiff must plead facts establishing "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." [2] *Halberstam v. Welch*, 705 F.2d 472,

---

[1] A district court may decline to exercise supplemental jurisdiction over other related claims "if [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

[2] Section 1985(3) of Title 42 of the United States Code "provides a cause of action against two or more persons who participate in a conspiracy motivated by class-based discriminatory animus . . . . 'The statute does not apply to all conspiratorial tortious interference with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987)). Plaintiff's failure to state a class-based discrimination claim necessarily defeats his

477 (D.C. Cir. 1983) (internal citation omitted). Plaintiff's conspiracy claim is based on nothing more than vague and conclusory allegations about the defendants' discrete decisions. "[C]ourts in this Circuit have repeatedly held that '[t]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law.'" *Lemon v. Kramer*, 270 F. Supp. 3d 125, 142-43 (D.D.C. 2017) (quoting *Bush v. Butler*, 521 F. Supp. 2d 63, 69 (D.D.C. 2007) (other citations omitted)).

Finally, Plaintiff's "Criminal Causes of Actions" (Compl. at 52) fail as a matter of law. First, the "Supreme Court has 'rarely implied a private right of action under a criminal statute,'" and "a 'bare criminal statute,' with no other statutory basis for inferring that a civil cause of action exists, is insufficient to imply Congress intended to create a concomitant civil remedy." *Lee v. United States Agency for Int'l Dev.*, 859 F.3d 74, 77 (D.C. Cir. 2017). Second, "in American jurisprudence . . . , a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Third, 18 U.S.C. §§ 241 and 242 (Counts 26-28) provide "no private right of action[.]" *Crosby v. Catret*, 308 Fed. App'x 453 (D.C. Cir. 2009) (per curiam). Fourth, Plaintiff's claim of torture (Count 29), in addition to being frivolous, is foreclosed by the torture statute, which

---

purported claims under § 1985 and § 1986 (Counts 27 and 28) "[s]ince § 1986 imposes liability upon a person who "neglects or refuses" to prevent a wrong under § 1985." *Jackson v. Donovan*, 856 F. Supp. 2d 147, 150 (D.D.C. 2012). Moreover, Plaintiff's purported claim under 42 U.S.C. § 1983 (Count 26) fails as a matter of law because § 1983 applies only to individuals acting "'under color of' the law of a state, territory or the District of Columbia," *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) (quoting § 1983), not the private defendants sued in this case.

states that nothing "in this chapter [shall] be construed as creating any substantive or procedural right enforceable by law . . . in any civil proceeding."  18 U.S.C. § 2340B. Fifth, the remaining criminal counts claiming "Corporate-Sponsored Terrorism, Hostage Taking" (Count 30), violations of the Racketeer Influenced and Corrupt Organizations Act (Count 31), and "Blacklisting, as Premeditated Plan to Kill/Commit Murder"--all because Plaintiff was denied a rental application--lack "an arguable basis in law and fact" and thus are frivolous as well.  *Brandon v. District of Columbia Bd. of Parole*, 734 F.2d 56, 59 (D.C. Cir. 1984).

## IV.  CONCLUSION

For the foregoing reasons, all of the Defendants' motions to dismiss will be GRANTED, and the federal claims will be dismissed with prejudice.[3]  A corresponding order will issue separately.

Date:  March 27, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[3] *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (A dismissal with prejudice is warranted when a trial court "determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' ") (quoting *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)).